David H. Krieger, Esq.
Nevada Bar No. 9086
HAINES & KRIEGER, LLC
8985 S. Eastern Ave., Suite 350
Henderson, NV 89123
Phone: (702) 880-5554
FAX: (702) 385-5518
Email: dkrieger@hainesandkrieger.com

Attorney for Plaintiff
*OSCAR S. CABRERA*

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| OSCAR S. CABRERA, | : Civil Action No.: _____ |
| Plaintiff, | : |
| v. | : |
| JPMORGAN CHASE BANK, NA | : **COMPLAINT** |
| Defendant. | : |

For this Complaint, Plaintiff OSCAR S. CABRERA, by undersigned counsel, states as follows:

## JURISDICTION

1. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 as this action arises under the Dodd-Frank Wall Street Reform and Consumer Protection Act (DFA), the Truth in Lending Act (TILA), 15 U.S.C. § 1601, *et seq.*, and the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2601, *et seq.*

2. This action is specifically filed to enforce regulations promulgated by the Consumer Finance Protection Bureau (CFPB) that became effective on January 10, 2014, specifically, 12 C.F.R. § 1024.35, *et seq.*, of Regulation X.

3. Plaintiff alleges as follows upon personal knowledge as to Plaintiff and Plaintiff's own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by Plaintiff's attorneys.

4. Supplemental jurisdiction exists (as applicable) pursuant to 28 U.S.C. § 1367 and this Court has original jurisdiction over Plaintiff's RESPA/TILA claims pursuant to 28 U.S.C. § 1331.

5. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) & (c), because Plaintiff is a resident of Clark County, Nevada and because Defendant is subject to personal jurisdiction in Clark County, Nevada; conducts business in Clark County, Nevada; the events giving rise to this action occurred in Clark County, Nevada; and Defendant is registered with the Nevada Secretary of State.

## **PARTIES**

6. Plaintiff OSCAR S. CABRERA ("Plaintiff"), is an adult individual residing in Las Vegas, Nevada.

7. Defendant JPMORGAN CHASE BANK, NA ("Defendant" or "Chase"), was doing business in the State of Nevada at all times herein.

## ALLEGATIONS APPLICABLE TO ALL COUNTS

8. On or about June 29, 2010, Plaintiff filed for Chapter 13 Bankruptcy in the United States Bankruptcy Court for the District of Nevada pursuant to 11 U.S.C. § 1301 *et seq*. Plaintiff's case was assigned Case Number 10-26368-mkn (the "Chapter 13" or "Bankruptcy").

9. On October 29, 2012, Plaintiff's Chapter 13 Plan was confirmed (the "Confirmed Chapter 13 Plan" or "Confirmation Order"). *See* Bankruptcy ECF No. 118.

10. Plaintiff made all payments required under the terms of the Confirmed Chapter 13 plan and after completing all payments under the Confirmation Order received a discharge on December 5, 2015 (the "Discharge"). *See* Bankruptcy ECF No. 144.

11. At the time the Bankruptcy was filed, Plaintiff was the owner of real property located at and commonly known as 669 Bighorn Creek Street, Henderson, NV 89002 (the "Property") which disclosed in the Bankruptcy schedules. *See* Bankruptcy ECF No. 1.

12. Plaintiff, at all times relevant, has maintained and currently maintains the Property as Plaintiff's primary, principal residence.

13. Defendant is the servicer of a note (the "Note") and a deed of trust (the "DOT") on the Property that allegedly secures the Note and DOT (collectively referred to hereinafter as the "Loan").

14. Defendant has been the servicer of the Loan since at least November 19, 2010.

15. At all times herein, Plaintiff's chief concern was to ensure that after repaying debts in Chapter 13 for several years and remaining current on the Loan – to the extent Defendant furnished information to national credit bureaus about the Loan – that Defendant's credit data reporting about the Loan was accurately reflected in Plaintiff's credit file to ensure a true "fresh start".

16. In January 2013, the CFPB issued a number of final rules concerning mortgage markets in the United States, pursuant to the DFA, Public Law No. 111-203, 124 Stat. 1376 (2010).

17. Specifically, on January 17, 2013, the CFPB issued the RESPA (Regulation X) and TILA (Regulation Z) Mortgage Servicing Final Rules, 78 F.R. 10901 (February 14, 2013) and 78 F.R. 10695 (Regulation X) (February 14, 2013), which became effective on January 10, 2014.

18. The Loan in the instant matter is a "federally related mortgage loan" as said term is defined by 12 C.F.R. § 1024.2(b).

19. Defendant is subject to the aforesaid Regulations and does not qualify for the exception for "small servicers", as such term is defined in 12 C.F.R. § 1026.41(e)(4), nor does Defendant qualify for the exemption for a "qualified lender", as such term is defined in 12 C.F.R. § 617.700.

20. Plaintiff is asserting claims for relief against Defendant for breaches of specific rules under Regulation X and Regulation Z, as set forth, *infra*.

21. Mortgage "Servicing" means (among other things) using consumer reports and furnishing information to consumer reporting agencies. See *FTC v. Green Tree Servicing, LLC*, Case No. 0:15-cv-02064-SRN-JSM, Doc. No. 5 at p. 7 (D. MN. April 23, 2015).

22. Plaintiff has a private right of action under RESPA pursuant to 12 U.S.C. § 2605(f) for the claimed breaches and such action provides for remedies including actual damages, costs, statutory damages, and attorneys' fees.

**SPECIFIC FACTS GIVING RISE TO THIS ACTION**

23. On or about October 4, 2018, Plaintiff sent correspondence to Defendant captioned or otherwise titled "Request for Information Pursuant to 12 C.F.R. § 1024.36 and 15 U.S.C. § 1641(f)(2); Request for Payoff Statement Pursuant to 12 C.F.R. § 1026.36(c)(3)" (the "RFI") via certified mail, wherein (among other items) Plaintiff requested a summary date Defendant furnished about

the Loan to any and all Credit Reporting Agencies, including but not limited to, Experian, Equifax, Transunion, and CBC Innovis ("the CRAs").

24.  In part, Plaintiff's RFI requested a month by month e-OSCAR report relating to Defendant's servicing of the Loan from the date the Bankruptcy was filed to present (the "Loan Reporting Credit Data Request" or "LRCDR").

25.  Defendant received the RFI October 8, 2018.

26.  As of the date of this complaint, Defendant failed to provide a proper, substantive response to the LRCDR as requested in the RFI or provide a proper objection to their obligation to provide such information.

27.  On or about December 20, 2018, as a direct result of Defendant's failure to provide the information requested in response to the LRCDR, Plaintiff sent additional correspondence to Defendant captioned or otherwise titled "Notice of Error pursuant to 12 C.F.R. § 1024.35(b)(11); and Second Request for Information pursuant to 12 C.F.R. § 1024.36" ("NOE #1") via certified mail again requesting Defendant provide a response to the LRCDR.

28.  In NOE #1 Plaintiff explained the importance of the LRCDR stating (among other things):

> As you are aware, you received my prior request for information about how you were servicing my mortgage loan payments and, specifically, what you were reporting about my mortgage payments to the credit bureaus (the "Information Request"). You thereafter provided a response to the Information Request dated Octobe r19, 2018, but failed to provide any of the requested servicing information regarding how you furnished information to credit bureaus while servicing my mortgage loan payments which falls squarely within your obligations under 12 C.F.R. §1024.36 and 12 C.F.R. § 1024.35(b)(11). Specifically, you wrote:
>
>> Thank you for contacting us about this mortgage account. We've enclosed the account history you requested.
>
> Your "response" was totally non-responsive to my credit reporting requests related to your servicing of my loan. The entire point of my request was to obtain the information you were providing to the credit bureaus after I filed my Chapter 13 bankruptcy to present, because the credit bureaus are suppressing the positive information you reported; not just a loan history without the relevant reporting. **I need this information from you** – since obviously know how you reported my mortgage while you serviced my loan – **so I can send a letter to the credit bureaus asking them to report the information which they are automatically suppressing due to their policies**.

29. Defendant received NOE #1 December 24, 2018.

30. As of the date of this complaint, Defendant again failed to respond to the LRCDR as requested in NOE #1.

31. Without the information requested by and through the LRCDR, Plaintiff remains at a total informational disadvantage and is unable to conduct a complete review as to the accuracy and completeness of Plaintiff's credit "file" as that term is defined pursuant to 15 U.S.C. § 1681a(g).

32. Defendant reported credit data via "e-Oscar" to the CRAs in the ordinary course of its business of servicing the Loan for the time periods responsive to the LRCDR.

33. Defendant is in the best position to know with certainty what data it furnished to CRAs regarding the Loan.

34. Defendant therefore was at all times herein the most reliable source of data furnished to the CRAs and under a statutory obligation to provide Plaintiff with a complete response to the LRCDR, since the LRCDR "relat[ed] to the servicing of" Plaintiff's Loan. See 12 C.F.R. § 1024.35(b)(11).

35. Defendant retains and can reasonably and readily access information furnished on the Loan to CRAs, which would be responsive to the LRCDR.

36. Defendant could have (if it chose) provided Plaintiff with responsive data to the LRCDR.

37. Upon information and belief, the CRAs utilize their own internal policies and procedures regarding data processing, which may result in data furnished by servicers (like Defendant) to be "suppressed". "Suppressed" data would not be visible to consumers (like Plaintiff) requesting a complete credit file pursuant to 15 U.S.C. § 1681g(a) from the CRAs.

38. Plaintiff would be unable to request the CRAs update Plaintiff's credit files as needed without knowing what data the CRAs may (or may not have) suppressed.

39. A complete response to the LRCDR would accordingly extract Plaintiff from the current informational disadvantage and put Plaintiff in a position to conduct a complete review of Plaintiff's credit files to ensure the benefit of the

"fresh start" and Defendant's positive credit data reporting are reflected in Plaintiff's credit files maintained with the CRAs.

40. Accordingly, without the benefit of a complete response to the LRCDR, consumers like Plaintiff are simply unable to determine whether their credit file is "accurate" and "complete" as those terms are meant pursuant to 15 U.S.C. § 1681i(a)(5)(A); and/or whether the CRAs followed "reasonable procedures to assure maximum possible accuracy" of Defendant's furnished data regarding the Loan as required pursuant to 15 U.S.C. § 1681e(b).

41. Through the LRCDR, Defendant's responsive data would permit Plaintiff to do a "side by side" comparison of 1) Plaintiff's credit file and 2) the LRCDR responsive data. This would allow Plaintiff to ensure that the data furnished about the Loan by Defendant is in sync with Plaintiff's consumer files (upon a request to the CRAs).

42. Stated differently, without a response to the LRCDR, Plaintiff simply is not is a position to know whether Plaintiff's consumer file is reflective of all the positive data being furnished by Defendant or if erroneous adverse credit information is being reported, to allow Plaintiff to inform the CRAs of such errors and maintain a complete and accurate credit file.

43. Defendant's failure to provide the LRCDR in response to the RFI and NOE#1 resulted in numerous servicing errors of the Loan by Defendant engaging in the following acts:

- Failing to supply requested information in a timely manner that would enable Plaintiff to ensure Defendant's data furnishing on the Loan was consistent with the timely Loan payments;

- Failing to properly respond to or otherwise correct errors in the servicing of the Loan of which Plaintiff has put Defendant on notice; and

- Improperly concealing information from Plaintiff relating to the servicing of the Loan, which Defendant furnished to national credit reporting agencies that are the subject of such noticed errors.

44. Defendant's improper actions have caused Plaintiff to incur a number of unwarranted costs and fees in an effort to obtain transparency about the routine servicing of the Loan vis-à-vis Defendant's credit reporting on the Loan.

45. Plaintiff at all times relevant, has merely wanted to pay (and has paid) ongoing monthly mortgage payments in fulfillment of the Loan obligations and to continue to rehabilitate Plaintiff's credit following Bankruptcy and reap the full benefits of the "fresh start" to which Plaintiff is entitled following Bankruptcy.

46. All attempts and requests for the LRCDR have fallen on deaf ears and any response Defendant has supplied has been dismissive, vague, or otherwise unhelpful and non-responsive in dereliction of its statutory duties discussed herein.

47. Defendant's improper actions have caused Plaintiff continued costs and damages. Indeed, Plaintiff remains unable to conduct a complete credit file

review and incurred significant costs in time, mailing and travel expenditures to resolve Defendant's errors.

48. Defendant's wrongful and willful actions have caused Plaintiff to suffer emotional distress driven by the fear Plaintiff will never be in a position to obtain a complete and transparent credit file, which has resulted in anxiety, depression, embarrassment, fear, frustration, anger, loss of sleep, loss of appetite, chest pains, headaches, feelings of helplessness and intimidation, , rage and other emotional distress as well as out of pocket expenses to, among other things, paying for mailing costs, stamps, paper, ink, gas, and lost time to prepare, mail, and review NOE #1.

**COUNTS 1 THROUGH 2: VIOLATIONS OF 12 C.F.R. § 1024.36(d)**
**(Failure to respond in a timely manner to a request for information issued pursuant to 12 C.F.R. § 1024.36)**

49. Plaintiff restates and incorporates herein all of the statements and allegations contained in the preceding paragraphs in their entirety, as if fully rewritten.

50. 12 C.F.R. § 1024.36(a) provides, in relevant part, that a request for information may consist of "any written request for information from a borrower that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and states the information the borrower is requesting with respect to the borrower's mortgage loan."

51. Comment 1 of the Official Interpretations of the CFPB to 12 C.F.R. § 1024.36(a) provides that "[a]n information request is submitted by a borrower if the information request is submitted by an agent of the borrower."

52. 12 C.F.R. § 1024.36(d)(1) provides, in relevant part, that:

> [A] servicer must respond to an information request by either:
>
> (i) Providing the borrower with the requested information and contact information, including a telephone number, for further assistance in writing; or
> (ii) Conducting a reasonable search for the requested information and providing the borrower with a written notification that states that the servicer has determined that the requested information is not available to the servicer, provides the basis for the servicer's determination, and provides contact information, including a telephone number, for further assistance

53. Furthermore, 12 C.F.R. § 1024.36(d)(2)(i) provides that:

> A servicer must comply with the requirements of paragraph (d)(1) of this section:
>
> (A) Not later than 10 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives an information request for the identity of, and address or other relevant contact information for, the owner or assignee of a mortgage loan; and
> (B) For all other requests for information, not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the information request.

54. Plaintiff sent an RFI to Defendant on or about October 4, 2018 and December 20, 2018. Plaintiff sent each RFI to Defendant at its self-designated address for the receipt of such correspondence pursuant to 12 C.F.R. § 1024.36(b).

55. The RFIs (and each of them), in part, constituted requests for information pursuant to 12 C.F.R. § 1024.36(a) as each RFI requested information "with respect to the borrower's mortgage loan."

56. Defendant received each of the RFIs within a week of the above mailing dates.

57. Pursuant to 12 C.F.R. § 1024.36(d)(2)(i)(B), Defendant was required to provide written correspondence to Plaintiff in response to Plaintiff's RFIs "not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the information request", as contained in the RFI, in compliance with the requirements of 12 C.F.R. § 1024.36(d)(1) (the "RFI Response Deadlines").

58. Plaintiff never received any written correspondence from Defendant containing a proper, substantive response to the LRCDR or otherwise containing a proper, valid objection as to why Defendant was not required to so respond to the LRCDR by the RFI Response Deadlines and Defendant therefore failed to comply with the requirements of 12 C.F.R. § 1024.36(d)(1) by the RFI Response Deadlines.

59. Defendant's actions, in failing to provide proper written correspondence to Plaintiff in response to Plaintiff's RFIs for the LRCDR before the RFI Response Deadlines, constituted a willful violation of 12 C.F.R. § 1024.36(d).

60. Defendant's actions are believed to be a pattern and practice of behavior in conscious disregard for Plaintiff's rights.

61. As a result of Defendant's actions, Defendant is liable to Plaintiff for actual damages, statutory damages, costs, and attorneys' fees.

### COUNT 3: VIOLATIONS OF 12 C.F.R. § 1024.35(e)
**(Failure to properly respond to a notice of error issued pursuant to 12 C.F.R. § 1024.35)**

62. Plaintiff restates and incorporates herein all of the statements and allegations contained in the preceding paragraphs in their entirety, as if fully rewritten.

63. 12 C.F.R. § 1024.35(a) provides, in relevant part, that "[a] servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred."

64. 12 C.F.R. § 1024.35(e)(1)(i) provides that a servicer must respond to a notice of error by either:

(A) Correcting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance; or

(B) Conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

65. Further, 12 C.F.R. § 1024.35(e)(3)(i) provides, in relevant part:

A servicer must comply with the requirements of paragraph (e)(1) of this section:
(A) Not later than seven days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the notice of error for errors asserted under paragraph (b)(6) of this section.
(B) Prior to the date of a foreclosure sale or within 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the notice of error, whichever is earlier, for errors asserted under paragraphs (b)(9) and (10) of this section.
(C) For all other asserted errors, not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the applicable notice of error.

66. Plaintiff sent NOE #1 to Defendant on or about December 20, 2018 to the address self-designated by Defendant for the receipt of such correspondence pursuant to 12 C.F.R. § 1024.35(c).

67. NOE #1 constituted a notice of error as such term is defined in 12 C.F.R. § 1024.35(a).

68. Defendant received NOE #1 December 24, 20181.

69. As of the date of this complaint, Defendant failed to provide responsive information to the LRCDR even though Defendant was a notice of its failure to provide same through NOE #1.

70. The failure to provide a response to the LRCDR addressed in NOE #1 resulted in the errors addressed in NOE #1 remaining uncorrected. Further, Defendant did not communicate the effective date it made any corrections (which would have been remedied in part by providing a response to the LRCDR) thereby failing to comply with 12 C.F.R. § 1024.35(e)(1)(i)(A).

71. Further, at no point in time in did Defendant provide a response to NOE #1 explaining that no error(s) occurred with an explanation as to the reason(s) for such determination(s) after performing a reasonable investigation into such pursuant to 12 C.F.R. § 1024.35(e)(1)(i)(B).

72. Defendant's actions, in failing to provide a proper response to the LRCDR as expressed in NOE #1, and previously RFI #1, failed to meet the express, explicit requirements of either 12 C.F.R. § 1024.35(e)(1)(i)(A) or 12 C.F.R. § 1024.35(e)(1)(i)(B).

73. Defendant's actions, in failing to provide a response to the NOE that meets the explicit and express requirements of 12 C.F.R. § 1024.35(e), constitutes willful violations of 12 C.F.R. § 1024.35(e).

74. Defendant's actions are believed to be a pattern and practice of behavior in conscious disregard for Plaintiff's rights.

75. As a result of Defendant's actions, Defendant is liable to Plaintiff for actual damages, statutory damages, costs, and attorneys' fees.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays that judgment be entered against Defendant awarding Plaintiff:

1. Actual damages pursuant to 12 U.S.C. § 2605(f)(1);

2. Statutory damages pursuant to 12 U.S.C. § 2605(f)(2) for each and every violation discussed above;

3. Costs of litigation and reasonable attorney's fees pursuant to 12 U.S.C. § 2605(f)(3); and

…

…

4. Any other legal or equitable relief that the court deems appropriate.

**TRIAL BY JURY DEMANDED ON ALL COUNTS**

Dated: March 4, 2019

        Respectfully submitted,

        By  /s/ David H. Krieger, Esq.

        David H. Krieger, Esq.
        Nevada Bar No. 9086
        HAINES & KRIEGER, LLC
        8985 S. Eastern Avenue, Suite 350
        Henderson, Nevada 89123
        Phone: (702) 880-5554
        FAX: (702) 385-5518
        Email: dkrieger@hainesandkrieger.com

        Attorney for Plaintiff
        *OSCAR S. CABRERA*